IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2006

## STATE OF TENNESSEE v. KENNETH W. THOMPSON, SR.

**Direct Appeal from the Circuit Court for Cheatham County**
**No. 14229    George C. Sexton, Judge**

———————————————

**No. M2005-01160-CCA-R3-CD - Filed April 21, 2006**

———————————————

The Defendant, Kenneth W. Thompson, Sr., pled *nolo contendere* to one count of attempted aggravated sexual battery, and the trial court sentenced him to five years, to be served at thirty percent. On appeal, the Defendant contends that the trial court erred when it denied his request for alternative sentencing. Finding that there exists no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES, J., joined. JOHN EVERETT WILLIAMS, J., concurred in the results only.

J. Robin McKinney, Jr., Nashville, Tennessee for the Appellant, Kenneth W. Thompson, Sr.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Robert S. Wilson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's indictment on six counts of rape of a child. The transcript of the guilty plea is not included in the record on appeal, but it appears that the victim, A.N.,[1] who was born on March 23, 1995, had lived with the Defendant since she was brought home from the hospital. The indictments indicate that between March 23, 1998, and September 1, 2003, the Defendant allegedly raped the victim numerous times. The Defendant pled *nolo contendere* to

———————————————

[1]It is the policy of this Court to refer to minor victims by their initials.

one count of attempted aggravated sexual battery occurring between March 23, 1998, and December 31, 1998, and, in exchange, the State agreed to not prosecute the remaining charges.

At the sentencing hearing, Debra Vance testified that she is a probation officer and created the sentencing report in this case. She stated that she gave the Defendant a questionnaire to complete prior to her interview with him. On the questionnaire, in response to the question asking about the Defendant's version of the offense and his reason for being involved, the Defendant wrote the word "lies." In his personal statement, the Defendant reported that he has previously been convicted of public intoxication and DUI. The probation officer said that she was unable to verify that the Defendant received a public intoxication citation, but she verified that he had been convicted of DUI and driving on a revoked license. Vance said that the Defendant also had an outstanding warrant in Davidson County for failure to appear on an assault charge.

Vance said that she discussed the victim with the Defendant. The Defendant told her that A.N.'s mother did not want to keep A.N., and the Defendant brought A.N. home from the hospital. Vance agreed that, at some point, the juvenile court gave the Defendant custody of A.N. Vance said that the reports that she had showed that the victim was three to four years old when she was abused by the Defendant. When Vance interviewed the Defendant, he said that there was no victim in this case because he did not do anything and that the charges are "bullshit from day one." Vance said that the Defendant told her that he planned to appeal all the charges when he was released from jail.

Vance said that the Defendant did not cooperate with her, and she described both of her interviews with him as "disasters." She said that he wanted to argue and did not cooperate with his questionnaire or the questions that she asked him. Vance testified that the Defendant refused to provide her with information. Vance opined that when a defendant will not cooperate with her in an attempt to get him out of jail that defendant has a slim chance of success on probation.

Vance testified that the Defendant has no family in the State and no residence. Vance said that the Defendant told her that he could live with his aunt. When Vance checked with the aunt, however, the aunt said she did not have room for him, and she did not want him staying there if it meant that her grandchildren could not be in the house. Vance said that the Defendant was asked about his employment in the questionnaire, and he responded "heavy equipment lifetime."

On cross-examination, Vance said that the Defendant had been in custody since October 9, 2003, but she was unsure how much jail credit the Defendant would receive. She said that she supervises people on probation and parole about equally and how intensive the supervision is depends on the offense committed. Vance said that, while there is not an "intensive probation" program in Cheatham County, she would be required to provide this kind of probation if so ordered by the trial court. Vance agreed that the Defendant's statement denying that he committed these crimes had remained consistent and that he professed his innocence "quite loudly." Vance agreed that the Defendant did not have any prior felony convictions or any prior convictions for sexual offenses.

Vance agreed that there was an issue with where the Defendant would live if he was given probation. She said that if the Defendant provided an address of where he would live she would have to investigate it to ensure that it was suitable. Vance agreed that if the Defendant served his sentence and was released there would be less supervision than if the Defendant remained on supervised probation for five years.

On redirect examination, Vance said that if the Defendant served jail time and was released he would have to report four times per year. Vance then offered a victim impact statement, which was admitted by the trial court. The victim impact statement showed that the victim gets very upset when the Defendant's name is mentioned, and she hopes that he stays in jail forever. The victim, who has had counseling, has a hard time trusting people and has an attachment disorder.

The Defendant testified that he had never been arrested for a felony before and that he lives on his social security check, which is $791.00 per month. The Defendant said that, while he had not had the opportunity to see it, he has a trailer to live in being held for him to use when he is released from jail. He said that there are just two trailers in the area and no children nearby. The Defendant said that he would live by himself and the trailer would cost him $135.00 per month in rent, which he could pay with his social security check. He testified that he intends to get a job once he gets his health problems straightened out. Specifically, the Defendant said that he had "black lung," but he admitted that he still smokes cigarettes. The Defendant said that he has broken his back twice, and he is losing feeling in his feet. He also testified that he is a veteran and was an infantry soldier for the Marine Corps for seven years.

The Defendant still denied the charges against him, but he apologized to Vance and to the trial judge for his demeanor during the interview. He agreed that he only took this plea bargain because he realized the range of possible punishment that he was facing. The Defendant said that, if the trial court placed him on probation, he would cooperate with Vance, and he would not violate his probation.

On cross-examination, the Defendant testified that the trailer where he would live is located in Nashville. He said that he has lived on that street before, and there are no schools or daycare centers located nearby. The Defendant said that he did not cooperate with Vance because "[m]aybe [he] didn't understand." Further, he said that he was sick at the time of the interview and that he had apologized to her. The Defendant said that he understood that he will have to register as a sex offender.

Based upon this evidence, and the arguments of counsel, the trial court found:

> I've considered the evidence presented at this hearing, the pre-sentence report, [and the] arguments of counsel. We have in this case, of course, an agreed upon sentence of five years. It's just a matter of whether and how this Court determines the [D]efendant should serve his sentence.

Based upon the evidence and arguments the Court finds that justice is best served in this case with the [D]efendant being order[ed] to serve the balance of his five years in Tennessee Department of Correctio[n] to avoid the depreciating the seriousness of the offense and as a deterrent to others who might be likely to commit this same offense.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it failed to grant him alternative sentencing. He asserts that the trial court based its decision to deny his request for probation based upon two factors: deterrence and to avoid depreciating the seriousness of this crime. The Defendant contends that the first of these factors, deterrence, is inapplicable to his case because the State failed to show a "special need or consideration" for deterrence. See State v. Hartley, 818 S.W.2d 370 (Tenn. Crim. App. 1991). The Defendant also contends that the second of these two factors does not apply because the circumstances of this offense were not especially horrifying, shocking, reprehensible, offensive, or otherwise to an excessive or exaggerated degree. See State v. Blackhurst, 70 S.W.3d 88 (Tenn. Crim. App. 2002). The State counters that neither it nor the trial court was required to show that there was a special need for deterrence. Further, it contends that the circumstances of the Defendant's crime are, in fact, horrifying, shocking, reprehensible, and offensive.

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review

-4-

its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

A defendant "who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a).

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2003). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated § 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

This Court has said:

> In determining whether to grant or deny full probation, additional considerations include the defendant's criminal record; social history and present condition of the

defendant, including his or her mental and physical conditions where appropriate; defendant's amenability to correction and general attitude, including behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and the best interest of both the Defendant and the public.

State v. Blackhurst, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001) (citations omitted). Failure to accept responsibility for one's criminal conduct reflects poorly on rehabilitative potential when determining whether alternative sentencing is appropriate in a particular case. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). Similarly, lack of candor and credibility reflect negatively on a defendant's potential for rehabilitation. Blackhurst, 70 S.W.3d at 98.

In the case under submission, the trial court found applicable factor (B) of Tennessee Code Annotated section 40-35-103(1), which states that confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. In order to deny an alternative sentence based upon avoiding depreciating the seriousness of the offense, the circumstances of the offense as committed must be especially horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all other factors favoring a sentence other than confinement. Blackhurst, 70 S.W.3d at 98. We conclude that the trial court did not err when it concluded that the Defendant's actions were sufficiently reprehensible and offensive to deny him probation. The Defendant committed attempted aggravated sexual battery to a three year old child, A.N., who was living with him. A.N. still suffers the effects of this abuse and is still scared when the Defendant's name is mentioned. The Defendant's actions showed terrible judgment and a disregard for the welfare of a child who was entrusted to his care. Consequently, a sentence of probation would certainly depreciate the seriousness of the Defendant's offenses.

Further, the Defendant has never apologized to A.N. or taken responsibility for his actions, and instead he has denied that the allegations are true. The Defendant also refused to cooperate with the probation officer, and he was not forthcoming about his potential living conditions with her. Under these circumstances, we conclude that the trial court did not err when it denied the Defendant's request for an alternative sentence.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE